—————O—————

SARAH N. ROBINSON, *et al.*, Respondents, *vs.* JOSEPH H. WAL-
TON, Appellant.

1. *Principal and agent—Representations of agent.*—The representations of an agent respecting the subject matter of his agency, if made at the same time with the transaction, as part of the *res gestœ,* will bind the principal.

2. *Principal and agent—Question of agency for the jury.*—The question of agency is one for the determination of the jury.

*Appeal from Washington Circuit Court.*

*G. I. Van Allen,* for Appellant

*Reynolds & Relfe,* for Respondents.

NAPTON, Judge, delivered the opinion of the court.

This suit is upon a guarantee of this note "Potosi, Mo., December 2, 1868. On or before the 14th day of July, 1869, we promise to pay to the order of Sarah N. Robinson, the sum of $1,464.44 negotiable and payable without defalcation or discount, and to bear interest at the rate of ten per cent. per annum from the 14th day of July, next, for value re-ceived. W. A. Mathews, D. E Perryman." Across the back of the note, appears the following: "Sarah N. Robinson, P. M. Robinson, the undersigned, for value received, hereby guar-

antee the payment of the within note, on or before Jan'y 31, 1870. Joseph H. Walton, by Frank Harris. Frank Harris." And the real controversy in this case is whether Frank Harris was authorized to sign the guarantee above recited. To determine this, it will be necessary to state the history of the transaction and of the trial.

A deed of trust to secure this note of Mathews and Perryman, dated July, 1869, was given, and of its priority over executions levied subsequently there could be no question.

Walton and Frank Harris had bought this land under such executions, and their title was of course subject to the deed of trust to Robinson and wife, and they were anxious to get rid of this lien, and to do so, proposed to Robinson to buy this note.

The proposal of Walton was at first to pay for it with a draft at ten days, which he expected to procure from his brother, and Robinson was instructed to go to Irondale, (where he lived) and procure his wife's signature, which he did. But Walton did not succeed in getting the requisite funds or the proposed draft, and he and Harris therefore wanted further time, which Robinson finally agreed to. After several fruitless negotiations on this subject, it was finally agreed between all three, to close the trade in Potosi on a day named, at Harris' store where Harris and Walton were to meet Robinson. Walton failed to be at Potosi at the designated time, and Harris and Robinson met, and Harris signed Walton's name to the guarantee, which Walton says was without authority, but Harris says was not.

Upon this point of fact there was of course conflicting testimony given by Harris, Walton and Robinson, but as the jury passed upon this, under instructions, the only question for our consideration is the propriety of the court's instructions and the admissibility of certain statements of Harris to Robinson, made in the absence of Walton.

All the evidence in relation to Harris' claim of agency, testified to by Robinson, was excluded by the court, but Harris himself testified on this point.

The instructions given were as follows, in substance: 1. If Mathews and Perryman made the note in suit, and Walton and Harris for a valuable consideration guaranteed that said note would be paid before the 1st of January, 1870, the jury will find for plaintiffs the amount unpaid. 2. An extension of time on a note is a valuable consideration, and if one holds out another man to a third party as his agent, to do certain acts, or states that he has authorized him to do what he thought best in regard to a particular transaction, in his name, and that he would ratify and confirm his acts in the premises, this would constitute the intermediary an agent in the particular transaction, and the third party, who deals with such agent concerning said acts and transactions upon the faith of said declarations of the principal, would be entitled to hold the principal bound by the acts of said agent, done in the line of his said appointment. 3. If then, in this case, the jury find that Robinson extended the time of payment of the note in suit, on consideration that Harris and Walton would guarantee its payment, and that defendant, Walton, told the plaintiff, Robinson, that whatever Harris would do about the note for him (Walton) and Harris would be all right, and that said Harris, acting for himself and as agent for Walton to obtain an extension of the time of payment from said Robinson, guaranteed its payment before January 1st, 1870, and signed the name of Walton and of himself to said guarantee, Walton is bound by said act of Harris, and if the said note was not paid on or before January 1st, 1870, defendant, Walton, is liable for the amount unpaid. 4. If the jury believe that Walton left it to the discretion or judgment of said Harris to do for Walton and himself whatever he, Harris, thought it necessary to do for him (Walton) and Harris, to acquire the interest of Robinson and wife in the note and deed of trust, or to secure an extension of the time of payment of said note, and that in the exercise of that discretion or judgment, and for these considerations, Harris made the guarantee upon the note sued on in the name of himself and said Walton, then said Walton is bound by the act of Harris. 5. If the jury

find that Walton's name was signed by Harris, and that Walton had not authorized Harris to sign his name, yet if they further find that after Harris had signed his name, he told Walton of it, and Walton made no objection and afterwards approved of it, this ratification is equivalent to a prior authority.

These and other instructions were given, not exactly in the words stated, but substantially.

For the defendants, the court instructed that unless they found that Walton authorized Harris to sign his name to the guarantee, the defendant was entitled to a verdict, and as to the burden of proof that it was on plaintiff, and the court further instructed that a mere general power to Harris to settle this matter with Robinson did not authorize Harris to sign Walton's name to the guarantee.

The court refused an instruction asked by the defendant, to the effect, that if they found that the amount due on the note should only be paid on condition that the plaintiffs should transfer the note and deed of trust at the time the note was to be paid, January 1, 1870, even if the money was not paid, plaintiffs cannot recover, unless the jury find that plaintiffs before the commencement of this action, offered to transfer said note and deed of trust to defendants, and still hold themselves in readiness to do so, on payment of the note.

The court, however, gave the following instruction for defendant: "The jury are instructed to disregard all the evidence given by plaintiff, Robinson, in regard to any statements made to him by Frank Harris, that were not made in the presence of defendant, Walton, unless the jury find that Harris was the agent of Walton, authorized to sign his name to the guarantee. If the jury believe from the evidence, that defendant, Walton, authorized Frank Harris to arrange matters with Robinson, in regard to buying the deed of trust, etc., still that of itself would not authorize Frank Harris to sign Walton's name as a guarantor to said note."

The principal questions here are on the admissibility of evidence and on the instructions. Robinson was not allowed

to state the declarations of Harris, in the absence of Walton, yet, on the instruction given to the jury, these declarations were allowed, if the jury found that Harris was Walton's agent. The order in which testimony is introduced is somewhat a matter of discretion with the court trying the case. Where no *prima facie* case of agency or complicity is made out, the declarations of the agent or alleged conspirator are properly excluded. In this case, the declarations to Robinson made by Walton himself, would seem to have warranted the admission of Harris' subsequent declarations subject to the proof of agency.

Greenleaf says, "The principal constitutes the agent his representative, in the transaction of certain business ; whatever, therefore, the agent does in the lawful prosecution of that business, is the act of the principal whom he represents, and where the acts of the agent will bind his principal, there his representations, declarations and admissions respecting the subject matter,.will also bind him, if made at the same time and constituting a part of the *res gestœ.*"

This observation of Mr. Greenleaf is based on the supposition of an established agency, and needs no·quotation of authorities to support it.

In the present case the agency is denied, and was really the point upon which the case turned. Harris, the alleged agent, testified most clearly to his agency in signing the guaranty. Walton, the principal, declared that the authority given to Harris was merely to stave off any definite action, until he could have an opportunity of examining the land. There seem to have been no willful misstatements on either side. But as Walton represented to Robinson, that Harris was authorized fully to represent him in the transaction, it was natural that the jury should incline to this view of the subject, and the question was one for the jury. Walton insisted, on his examination, that the authority he gave Harris was conditional on his examination of the land, which he proposed to make, and that all he said to Harris was to authorize him to make any arrangement which would postpone the sale, till

Robinson, et al. v. Walton.

he could look into the matter. Harris denies this, and moreover, says that after the guaranty was signed by him he apprised Walton of it, and he further states, that he told Walton, when Walton said he could not attend at the proposed meeting of Robinson, Walton and Harris, at Potosi, that he did not very well see how they could expect to get time, except by their guaranty, till Jan. 1st, and Walton assented, and told Harris to do the best he could. In accordance with this authority, Harris signed Walton's name to the guarantee. His right to do so was found by the jury, and Walton's statements to Robinson seem to have authorized Robinson to rely on his representations that he had such authority.

There is really no conflict of statements between Walton and Harris on this point, which would require the issue to be decided one way or the other, on the mere question of veracity. Walton seems to have understood his authority to Harris as conditional upon his examination of the land. Harris did not so understand it, or so represent it to Robinson. He considered himself authorized to guarantee without regard to Walton's investigations, and so represented to Robinson. There is no doubt from Robinson's testimony, that Walton held out Harris as fully authorized to represent him in the matter. Under these circumstances it is not singular that the jury found for the plaintiffs, notwithstanding the instruction of the court which very much favored the defendants.

A *prima facie* case of agency was necessary to authorize the admission of Harris' declarations to Robinson. This was established by Robinson's statements, that Walton declared to him that Harris was fully authorized to arrange the matter. But Harris was a competent witness to prove his agency, and when his testimony and that of Walton was given, the question of agency was for the jury, and the court instructed the jury that unless they were satisfied that Walton authorized Harris to be his agent, all the declarations of Harris to Robinson should be disregarded.

These instructions could not well be complained of by the defendant. The instruction asked in regard to the title of land was properly refused, as there was no issue on this and the matter was entirely outside of the case.

The judgment must be affirmed; the other judges concur.