Lapsley v. Howard.

LAPSLEY v. HOWARD *et al.*, *Appellants*.

Division Two, January 31, 1894.

1. **Equity of Redemption:** REASONABLE TIME. Where the time within which to redeem land is not fixed by agreement, payment must be made or tendered within a reasonable time.

2. **Contract:** REVOCATION. A proposal to enter into a contract may be recalled at any time before acceptance, but not afterwards.

3. **Deed of Trust:** PURCHASER: REDEMPTION. One buying land subject to a deed of trust has the same right to redeem which his grantor possessed.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Scammon, Crosby & Stubenrauch* for appellants.

(1) The proposal made by Cosby, through his agent, Winter, to release lot 13, in block 1, on payment of $750, not being accepted by the parties to whom it was made, did not constitute a binding contract. Neither respondent nor any of his privies ever promised to pay the $750 until after the offer was withdrawn. 3 Am. and Eng. Encyclopedia of Law, pp. 846, 850, 852; *Miller v. McKensie*, 95 N. Y. 575; *Langworthy v. Mitchell*, 26 Ohio St. 334; *Brown v. Rice*, 29 Mo. 332; *Eads v. Carondelet*, 42 Mo. 113. (2) The respondent

conceded by his tender that $750 and interest was due appellants. He did not make his tender good by bringing this money into court, where the appellants could get it upon judgment rendered that the trustee be forever restrained from foreclosure. The court had no right to make such judgment without such tender. By it the court destroyed the lien and permitted the respondent to escape his conceded liability. *Werner v. Tuck*, 127 N. Y. 217; R. S. 1889, section 2938; *Landis v. Saxton*, 89 Mo. 375–382. (3) It can not be said that the appellants are estopped to refuse to take the $750 in full of their deed of trust against lot 13, for they made no representations to either Lapsley or Baker. *Taylor v. Zepp*, 14 Mo. 482; *Newman v. Harp*, 37 Mo. 407; *Burke v. Adams*, 80 Mo. 514; *Union Sav. Ass'n*, 7 Mo. App. 163.

*Karnes, Holmes & Krauthoff* for respondent.

(1) When Lapsley acquired the equity of redemption by the purchase from Patterson, it goes without saying he had the right to redeem the lot for the same amount and on the same terms that Patterson could have done. 2 Jones on Mortgages [4 Ed.], secs. 1055 and 1061. (2) The tender was kept good by paying into court the amount due. (3) The objection to Lapsley's maintaining the suit is not well taken. 2 Jones on Mortgages, *supra*. (4) Appellants are estopped to deny the release agreement.

BURGESS, J.—This is an action by plaintiff to redeem a certain lot from the lien of a deed of trust in the nature of a mortgage, and to enjoin the defendant, Howard, as trustee, from selling said lot under the deed of trust, the defendant Cosby being the beneficiary.

The facts disclosed by the record are as follows:

In the latter part of June, 1887, Felicite H. Grebe was the owner of lots 9, 10, 11, 12 and 13, in block 1, in S. B. Moody's addition to Kansas City, Missouri. On these lots, and four others in block 2, was a deed of trust for several thousand dollars, in favor of Jas. F. Cosby, in which defendant Fred'k Howard was trustee. George F. Winter was at the time Cosby's agent at Kansas City, having in charge the deed of trust referred to. While this deed of trust was on the property, Grebe made a sale of the property to one Patterson, who caused the deed of lot 13 to be taken in the name of one John M. Rood, and the remaining lots were deeded, at Patterson's request, to one Geo. W. Honey. Rood paid no consideration for the conveyance to him. Rood afterwards, at the request of Patterson, conveyed the property to George Lapsley, the plaintiff, in June, 1888. Lot 13 was in Fourteenth street, and in the latter part of 1888 it was condemned by the city, to form a part of that street. The title was taken in Rood's name in the first instance, because the interested parties thought they could get more out of the city for the lot if the same party did not appear to own that and the other lots named, which would become a corner on the opening of the street.

After the purchase of the lots, Honey and Patterson entered into a contract to build houses on the lots 9, 10, 11 and 12, with one C. W. Baker as surety. Honey and Patterson failing to comply with their contract, Baker completed it, and upon his request, and without the payment of any consideration, lot 13 was conveyed to the plaintiff, Geo. H. Lapsley, who brought suit.

Prior to the purchase of the lots from Grebe, the agent, Winter, in consideration of $8,000 paid, released from Cosby's deed of trust lots 9, 10, 11 and 12. He testifies that he agreed to release lot 13, provided $750

more was paid in twenty days from the date of the deed, June, 1887. The plaintiff's witnesses claim that there was no limit within which the money was to be paid and the release made. In November, 1888, after the property had been condemned for street purposes and the damages assessed for its taking at $2,500, Lapsley went to Winter, offered to pay the $750 and interest, and demanded a release of the deed of trust as to lot 13, which was refused. The property had meanwhile very considerably depreciated in value. Lot 13 and the lots in block 2 were then advertised for sale by the trustee Howard under the deed of trust at the request of Winter, the agent of Cosby. On the application of Lapsley, the court granted a temporary injunction, restraining the sale of lot 13, which, on the final hearing, was made perpetual.

The court made a finding of facts in substance as ... That at the time Grebe and wife sold the ... erson, James F. Cosby, the beneficiary in ... st, did then and there agree with the purcha... his assigns, that upon the payment of the sum of ... 0 said lot 13, in block 1 should be released from the lien from said deed of trust; that thereafter the plaintiff, orge H. Lapsley, became the purchaser of said lot and was at the time of said purchase informed by said Cosby and his agents and representatives, that it had been agreed by said Cosby to release said lot from the lien of said deed of trust upon the payment of the sum of $750, and that the same would be released upon the payment of said sum with interest thereon from the th day of June, 1888, the date at which said agreement was made, and that the plaintiff relying ... said statement and agreement became the purchaser of said lot, and afterwards tendered to said Cosby and his agent the sum of $750, with interest thereon from the date last aforesaid,

which was then and there refused; and that there was due on said sum of $750, including interest, at the time of the trial the sum of $870, which was then and there paid into court by plaintiff for the use and benefit of said Cosby, and for the purpose of satisfying said deed of trust as against said lot 13.    The case is here on defendant's appeal.

While Winter, the agent for Cosby, testified that he offered to take $750, and release the lot in controversy from the deed of trust, he also stated that it was on the express condition that the money was paid within twenty days from the time of the sale of the lot to Baker, July 13, 1888.    The great weight of the testimony, however, is the other way, that is, that there was no time fixed in which the money was to be paid; in other words, that the time was not limited.    As the evidence shows that the time was not limited, Winter's offer, in order to have been binding on his principal, Cosby, must have been accepted in some way; either by the payment or offer to pay the money or otherwise within a reasonable time.    *Moxley v. Moxley*, 2 Met. (Ky.) 309; *Railroad v. Dane*, 43 N. Y. 240; *Loring v. Boston*, 7 Met. (Mass). 409; *Averill v. Hedge*, 12 Conn. 424; *Mizell v. Burnett*, 4 Jo      L. (N. C.) ⁀49.    This was not done until Novembe  16, 1888, when the plaintiff tendered to Winter the $750 and intere ͵ which he declined to accept.

Winter, on October 6, 1888, addressed to Baker the following letter:

"Kansas City, Mo., October 6, 1888.
"*C. W. Baker, 1 and · Baird Building, Kansas City, Mo.:*
"Dear Sir:—In accordanc  ith the understanding had with Mr. Grebe and his ͵epresentative at the time of the sale to you, and release of lots nine (9), ten (10), eleven (11), and twelve (12), block one (1), S.

C. Moody's addition, June 16 last, $750.00 additional was to be paid within twenty days afterwards, and upon payment of the same, lot thirteen (13), same block, was to be released; this has not been done.

"Proceedings have been commenced for condemning the property for the opening of Fourteenth street. We understand that you are more interested in this property than any one else, and if the amount specified is not to be paid we wish to know it, that we may take such steps as may be necessary to protect Mr. Cosby's interest, which we represent in these proceedings.

"Will you please advise at once your pleasure in the matter?

"Respectfully yours,

"G. F. WINTER & Co."

To this letter, Baker or Lapsley, who were partners in the real estate business, made no reply, for the reason, as stated by Lapsley in his testimony, that he understood to the contrary. After the letter was received and on November 16, 1888, plaintiff called on Winter at his office, and tendered him the $750 and interest, which he declined to accept, but stated to Lapsley that he would accept it, if the verdict of the jury assessing the damages at $2,500 for the lot stood, which it seems was never disturbed.

Even if the time for the payment of the $750 had been limited to twenty days after the sale of the lot to Baker as stated by Winter & Co., in their letter to him, yet some months after the twenty days had expired, as shown by that letter, Winter & Co. recognized the existence of the contract, which together with the continuation of the parties thereto to thereafter treat it as still existing amounted to a waiver as to the time in which the money was to have been paid, and all that was necessary was that it should have been paid in a reasonable time, to be determined by the nature of the

case. *Mastin v. Grimes*, 88 Mo. 478. And we can not say that the offer of payment on November 16 was not in a reasonable time. While a proposal to contract may be revoked or withdrawn at any time before acceptance, it can not be afterwards. 3 Am. and Eng. Encyclopedia of Law, 850, and authorities cited.

Plaintiff having acquired the title to the lot subject to the deed of trust, certainly had the same right to redeem it from the deed of trust that his grantors had, and such right was recognized by Winter when plaintiff tendered to him the amount of the redemption money and interest on the sixteenth day of November, which the plaintiff says that he agreed to accept in the event that the verdict of the jury assessing the damages to the lot stood.

The amount of redemption money and interest amounting to $870 at the time of the trial in the court below, as appears from the record, was deposited by the plaintiff with the clerk of the court for the use and benefit of defendants, so that there does not seem to be anything in that point.

While Baker might very properly have been made a party to this suit, yet as the legal title of the lot was in the plaintiff, he was not a necessary party.

It follows that the judgment of the circuit court must be affirmed. It is so ordered. All of this division concur.